IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CHRISTINA M. ROBINSON, on behalf of herself and all others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) GRACO CHILDREN'S PRODUCTS INC. and NEWELL RUBBERMAID INC., ) ) ) Defendants. ) | Case No. 2:11-CV-02379-RMG |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE**

Defendants Graco and Newell,[1] in response to Plaintiff's ("Robinson") Memorandum in Opposition to Defendants' Joint Motion to Dismiss (ECF No. 21), respectfully submit this Reply in Support of Their Joint Motion to Dismiss Plaintiff's Complaint with Prejudice (ECF No. 7).

**INTRODUCTION**

Robinson's response to Defendants' motion completely fails to address the fatal flaw in her Complaint. Rather than confronting the absence of any allegation of a finding by the National Highway Transportation Safety Administration ("NHTSA") that the TurboBooster does not comply with the applicable Federal Motor Vehicle Safety Standard ("FMVSS"), Robinson sets out to rebut a preemption argument Defendants are not asserting. Further, Robinson attempts to sidestep Defendants' challenge to her standing even to bring claims by relegating directly adverse authority to two footnotes, while simultaneously failing to provide any authority demonstrating that she has alleged a legally cognizable injury. Instead, Robinson asks this Court

---

[1] For ease of reference and consistency, the parties are referred to herein in the same manner as in Defendants' Memorandum in Support of Their Joint Motion to Dismiss with Prejudice.

to adopt a position in direct contradiction of the prior decisions of this District, the Fourth Circuit, and the Supreme Court of South Carolina, as well as the vast majority of jurisdictions that have decided similar "no-injury" claims. For the reasons stated in Defendants' opening memorandum and below, the Court should dismiss Robinson's Complaint with prejudice.

## ARGUMENT

**I.     Robinson Does Not Appreciate That Her Failure to Allege a Determination by NHTSA of Noncompliance Is Fatal to Both of Her Claims.**

Remarkably, Robinson fails to address Defendants' argument, and the extensive case law cited by Defendants, that NHTSA has the exclusive authority to determine whether products such as the TurboBooster comply with NHTSA-promulgated standards. (*See* Pl.'s Mem. 14–18.) Instead, she argues that the Safety Act does not preempt her claims. (*Id.* 14–15.) This response ignores the fundamental point of Defendants' argument. Defendants do not contend that the Safety Act preempts state law tort claims. Rather, Robinson's claims are fatally flawed because: 1) they are premised on the underlying allegation and factual predicate that the TurboBooster violates NHTSA standard FMVSS 213; 2) only NHTSA has the authority to make such a determination; and 3) NHTSA has never determined that the TurboBooster fails to comply with FMVSS 213.[2]

The plain language of Robinson's Complaint demonstrates that her claims are premised exclusively on the TurboBooster's supposed noncompliance with FMVSS 213. She alleges that the TurboBooster contains a design defect because its armrest can separate or change position

---

[2] Robinson's argument that the Safety Act does not preempt common law claims is irrelevant to these issues, as is her reliance on the sole case she cites on this point, *Welsh v. Century Prods. Inc.*, 745 F. Supp. 313 (D. Md. 1990). *Welsh* addressed whether a plaintiff's *tort*-based state law claims were preempted by the Safety Act. *Id.* at 314–15. *Welsh* does not deal with claims that sound in contract, as is the case here, nor does it address the question of whether NHTSA is the sole arbiter of whether a child seat fails to meet a particular FMVSS. *Welsh* therefore does not save Robinson's claims from dismissal.

during a sled test and that such an occurrence violates FMVSS 213. (Compl. ¶¶ 23–26.) She makes no other allegation indicating how or why such test results would demonstrate a design or safety-related defect. Instead, she relies entirely on the alleged noncompliance with FMVSS 213 as the basis for her assertion that the TurboBooster is defective. (*Id.* ¶¶ 49, 51, 54 (breach of warranty is based on her allegation that Defendants warranted that the TurboBooster conformed with all FMVSS, when it allegedly did not); *id.* ¶¶ 64, 66 (fraudulent concealment is based on her allegation that Defendants sold TurboBoosters with the knowledge that they deviated from FMVSS 213).) To prevail on either of these claims, Robinson must demonstrate the underlying factual predicate that the TurboBooster does not comply with FMVSS 213.

Yet the only entity with the authority to make such a finding of noncompliance has never done so. Indeed, Robinson does not refute that determination of noncompliance with an FMVSS belongs exclusively within the regulatory purview of NHTSA. (*See* Defs.' Mem. 12–15.) Robinson cites no authority challenging this well-established principle, because there is none.

Nor does Robinson allege that NHTSA has ever determined that the TurboBooster violates FMVSS 213. She further concedes that, "She is not alleging that *she* has determined that the TurboBooster does not conform to FMVSS 213." (Pl.'s Mem. 15 (emphasis in original).) If neither Robinson nor NHTSA has made such a determination, then no one has. Without an allegation of such a determination, there can be no breach of warranty and no misrepresentation tied to the statement: "This child restraint system confirms to all applicable Federal Motor Vehicle Safety Standards." (Compl. ¶ 45.)

The gravamen of Robinson's claims for damages is that she bought a child seat that was being warranted and represented as compliant with all applicable Federal standards. Because even she disclaims any such determination of noncompliance, all her claims fail. The question is

not whether the Safety Act preempts her claims. Instead, the question is whether she has alleged facts sufficient to have any claims at all. Under the facts Robinson has alleged, she does not.

**II.     Robinson Cannot Square Her Claims With *Wilson* and *Walters*.**

Robinson's response fundamentally misunderstands the Supreme Court of South Carolina decision in *Wilson v. Style Crest Prods, Inc.*, 367 S.C. 653 (2006), and the opinion of District Judge Joseph F. Anderson, Jr. in *Walters v. Maytag Corp.*, No. 3:07-cv-03669-JFA, slip op. at 6–7 (D.S.C. June 17, 2008) (attached as Ex. C to Defs.' Mem.).

First, Robinson incorrectly asserts that *Wilson* involved only an appeal of breach of implied warranty and product liability claims and thus is "distinguishable from a breach of express warranty action." (Pl.'s Mem. 7.) In *Wilson*, the "Homeowners appeal[ed] only the grant of summary judgment as to: Count 3 (breach of express warranty) . . . ; and Counts 4, 5, and 8 (breaches of implied warranty of workmanlike service and merchantability and fraudulent concealment) . . . ." 367 S.C. at 656 (emphasis added). The Court held that "[t]he pivotal issue in this case is whether the Homeowners must prove an actual injury to person or property to bring their warranty and fraudulent concealment claims," and it affirmed judgment against the Homeowners for failure to prove an actual injury to person or property. *Id.* at 657, 659. The *Wilson* Court did not draw any distinction between breach of express and implied warranty claims in upholding summary judgment against those claims, as Robinson now suggests.

Second, Robinson claims that *Walters* "does not . . . cite to any South Carolina case for the proposition that, in a breach of express warranty case, a plaintiff must allege a manifestation of the defect." (Pl.'s Mem. 7 n.4.) Directly contrary to Robinson's statement, however, this Court in *Walters* relied specifically on *Wilson* and its "holding that plaintiff must prove actual injury to person or property to bring warranty and fraudulent concealment claims." *Walters*, No. 3:07-cv-03669-JFA, slip op. at 6 (citing *Wilson*, 367 S.C. at 659). Robinson's breach of express

warranty and fraudulent concealment claims therefore fall squarely within the reasoning and holdings of *Walters* and *Wilson*.

Robinson simply has not alleged that she has sustained any legally recognized form of damage. Her vague reference to having suffered "monetary loss" is wholly insufficient to establish an injury in fact for which this Court can fashion a remedy. (*See* Defs.' Mem. 7–11.) Just as in *Wilson* and *Walters*, as well as the countless other "no-injury" decisions cited by Defendants, Robinson's claims are fatally flawed because she has not alleged facts showing any injury in fact stemming from her purchase or use of a TurboBooster. Accordingly, Defendants are entitled to dismissal of Robinson's Complaint.

### III.     Robinson Cites No Authority That Excuses Her From Pleading Certain Additional Elements of Her Claims.

#### A.     Pre-Suit Notice Is Required for Robinson's Breach of Express Warranty Claim.

Robinson also argues that she is excused from South Carolina's pre-suit notice requirement for her breach of express warranty claim. (Pl.'s Mem. 18.) Robinson does not attempt to distinguish the authority requiring that plaintiffs provide pre-suit notice to manufacturers. (*See* Defs.' Mem. 21.) But even setting aside that failure, the cases on which she relies demonstrate the failings of her own argument, including *Seaside Resorts, Inc. v. Club Car, Inc.*, 308 S.C. 47 (Ct. App. 1992), and *Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505 (D.S.C. 2007). Both *Seaside Resorts* and *Thomas* held that the pre-suit notice requirement is still required in breach of product warranty cases, but may be satisfied by providing notice to the seller.

In particular, *Seaside Resorts* held that "[a]s long as Seaside notified Club Car, the statute did not require Seaside to give <u>further</u> notice to Lester, the manufacturer which sold the goods to Club Car, but which was not Seaside's immediate seller." *Seaside Resorts, Inc.*, 308 S.C. at 60

(emphasis added); *accord Thomas*, 246 F.R.D. at 511 (quoting *Seaside Resorts, Inc.*, 308 S.C. at 60)). *Seaside Resorts* did not excuse the purchaser of the notice requirement of S.C. Code Ann. § 36-2-607(3)(a), but instead simply recognized that notice to the purchaser's immediate seller was sufficient to comply with the statute.

As Defendants point out in their opening memorandum, "Robinson's Complaint is devoid of any allegation that she ever provided notice to the Defendants or to <u>anyone else</u> prior to filing this lawsuit regarding any supposed defect in the TurboBooster she purchased." (Defs.' Mem. 21 (emphasis added).) For this reason, and the numerous other failures in Robinson's pleading that are outlined in Defendants' memorandum, Robinson's breach of express warranty claim should be dismissed.

    **B.    No Authority Supports a Duty That Gives Rise to Robinson's Fraudulent Concealment Claim.**

Robinson also cites no authority that demonstrates a duty on the part of Defendants, the breach of which gives rise to a claim for fraudulent concealment. Most importantly, Robinson fails to address the binding Fourth Circuit decision that the Safety Act does not create an affirmative duty on the part of a manufacturer to disclose information to support a fraudulent concealment claim under South Carolina law. *See Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 447–48 (4th Cir. 2001) (reversing a jury's verdict and directing the district court to enter judgment on that claim in favor of DaimlerChrysler on plaintiff's fraudulent concealment claim) (citing *Ardis v. Cox*, 314 S.C. 512, 516–17 (Ct. App. 1993)).

Instead of confronting *Jimenez*, Robinson attempts to divert this Court's attention to a prescription drug case in which a generic drug manufacturer had an explicit statutory requirement to label its drug with the identical FDA-approved label as the name-brand drug. *See Fisher v. Pelstring*, No. 4:09-cv-00252-TLW, 2011 WL 4552464, at \*69 (D.S.C. Sept. 30, 2011)

("*Fisher I*"). But Robinson fails to recognize that *Fisher I* was limited in an important respect by another decision in the very same proceeding. *See Fisher v. Pelstring*, No. 4:09-CV-00252, 2010 WL 2998474, at *9 (D.S.C. July 28, 2010) ("*Fisher II*") (attached as Ex. K to Defs.' Mem.). In *Fisher II*, the same court dismissed claims for fraudulent concealment against the brand-name drug manufacturers — who did not have the explicit statutory requirement in *Fisher I* — because they had no affirmative duty to disclose under South Carolina law. *Id.* (citing *Ardis*, 314 S.C. at 516–17).

At bottom, Robinson's argument is fatally flawed because she has not alleged a fiduciary or confidential relationship on which to base a claim for fraudulent concealment. *See Jimenez*, 269 F.3d at 447–48; *Ardis*, 314 S.C. at 516–17 (affirming trial court's dismissal where "complaint reveals a failure to allege any kind of fiduciary or confidential relationship between the parties"). Defendants are therefore entitled to dismissal of Robinson's fraudulent concealment claim.

### C. Robinson's Fraudulent Concealment Claim Is Barred by the Economic Loss Rule in *Sapp*.

Finally, Robinson fails to address the Supreme Court of South Carolina's holding in *Sapp v. Ford Motor Co.*, 386 S.C. 143, 150 (2009), that "the economic loss rule precludes . . . recovery in tort." Instead, she relies on cases that predate *Sapp*. *See Ross v. Jackie Fine Arts, Inc.*, No. 2:85-2425-1, 1991 U.S. Dist. LEXIS 13535 (D.S.C. Sept. 4, 1991); *Enhance-It, LLC v. Am. Access Techs., Inc.*, 413 F. Supp. 2d 626 (D.S.C. 2006); *Schnellmann v. Roettger*, 373 S.C. 379 (2007). Those cases are unavailing in the light of the Court's clarification of the economic loss rule in *Sapp* that "there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself." 386 S.C. at 146. Robinson's argument fails to explain why the economic loss rule as set forth in *Sapp* would not preclude her fraudulent concealment

claim. Having failed to allege anything other than perhaps benefit-of-the-bargain damages, she is precluded from asserting tort-based claims, and her fraudulent concealment claim must fail.

## CONCLUSION

For all of the foregoing reasons and the reasons stated in their opening memorandum, Defendants respectfully request that this Court dismiss Robinson's Complaint with prejudice for her failure to allege facts demonstrating either that she has Article III standing or that she can state a plausible claim for breach of express warranty or fraudulent concealment.

Dated this 28th day of November, 2011.

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ Michael T. Cole
    Michael T. Cole
    Federal Bar No. 206
    E-Mail: mike.cole@nelsonmullins.com
    151 Meeting Street / Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, SC  29401-2239
    (843) 853-5200

    A. Mattison Bogan
    Federal Bar No. 9826
    E-Mail: matt.bogan@nelsonmullins.com
    1320 Main Street / 17th Floor
    Post Office Box 11070 (29211-1070)
    Columbia, SC  29201
    (803) 799-2000

    Joseph J. Krasovec, III  (*admitted pro hac vice*)
    Heidi Oertle  (*admitted pro hac vice*)
    Stephen M. Copenhaver  (*admitted pro hac vice*)
    Schiff Hardin LLP
    233 S. Wacker, Suite 6600
    Chicago, Illinois  60606
    (312) 258-5500

    *Attorneys for Defendants Graco Children's Products Inc. and Newell Rubbermaid Inc.*

- 9 -

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on November 28, 2011, he electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following e-mail addresses:

    Gedney M Howe, III
    PO Box 1034
    Charleston, SC 29402
    ghowe@gedneyhowe.com


    Andrew Hoyt Rowell, III
    Richardson Patrick Westbrook and Brickman
    PO Box 1007
    Mt Pleasant, SC 29465
    hrowell@rpwb.com


    Thomas Christopher Tuck
    Richardson Patrick Westbrook and Brickman
    PO Box 1007
    Mt Pleasant, SC 29465
    ctuck@rpwb.com


            /s/ Michael T. Cole